# STATE OF MICHIGAN

# COURT OF APPEALS

ITT WATER & WASTEWATER USA INC., f/k/a
ITT-FLYGT CORPORATION,

        Plaintiff/Counter-Defendant/
        Appellee,

v

L. D'AGOSTINI & SONS, INC., LAKESHORE
ENGINEERING SERVICES, INC., and
TRAVELERS CASUALTY & SURETY CO. OF
AMERICA,

        Defendants,

and

L. D'AGOSTINI & SONS, INC./LAKESHORE
ENGINEERING SERVICES, INC. JOINT
VENTURE,

        Defendant/Counter-Plaintiff/
        Appellant.

UNPUBLISHED
March 10, 2015

No. 319148
Wayne Circuit Court
LC No. 11-006958-CK

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

        Defendant/counter-plaintiff, L. D'Agostini & Sons, Inc./Lakeshore Engineering Services, Inc. Joint Venture (defendant), challenges two orders partially granting two motions for summary disposition filed by plaintiff/counter-defendant, ITT Water & Wastewater USA Inc. (plaintiff), regarding defendant's counterclaim in this contract dispute. Because the order appealed was not a final order appealable by right, we have no jurisdiction over this matter. We dismiss this appeal for lack of jurisdiction.

        Defendant was the general contractor hired by the Detroit Water and Sewer Department to construct a new sanitary and storm water treatment and pumping station. Plaintiff agreed to sell defendant eight special pumps for the project. Plaintiff filed this breach of contract action after defendant failed to pay the balance owed on their purchase. Defendant filed a

-1-

counterclaim, alleging that plaintiff breached their contract first by failing to deliver the pumps by the agreed dates, which caused project delays and related damages.

Defendant eventually provided plaintiff with a claim summary of its purported damages, which included unabsorbed home office overhead damages and extended general conditions damages. Plaintiff filed a motion for partial summary disposition of defendant's counterclaim pursuant to MCR 2.116(C)(10), arguing that defendant could not establish that it was entitled to those damages. In particular, there was no evidence that plaintiff caused any delay to the overall completion of the work, i.e., to the critical path of the project; that defendant actually suffered these damages; or that the damages were reasonably foreseeable. Moreover, plaintiff argued, defendant's methods of calculating the amounts of its alleged damages were unreliable and not recognized as acceptable methods in Michigan. That is, defendant utilized the *Eichleay*[1] method to calculate home office overhead damages, but no Michigan court recognized that method as providing a reasonable approximation of the amount of actual damages arising from delay. Further, defendant calculated its purported general conditions damages using a total cost method which was unreliable and not an accepted method because it does not quantify the daily expenses actually incurred during the delay. Defendant responded to plaintiff's motion, arguing that it would demonstrate that plaintiff caused a 103-day delay which resulted in the claimed and foreseeable damages. Further, the *Eichleay* method of calculating home office overhead damages was a reasonable and well-known method and defendant's claim for general conditions damages was not a "total cost" claim.

At the hearing on the motion, the trial court agreed with plaintiff that defendant could not rely on the *Eichleay* method to calculate home office overhead damages; rather, it had to prove actual damages. But, because a genuine issue of material fact existed as to whether the delay caused defendant to suffer these damages, plaintiff's motion in that regard was denied. The parties agreed that defendant's calculation of its purported extended general conditions damages was analogous to the *Eichleay* method in that it prorated expenses based on the length of the delay and the trial court ruled similarly: defendant could proceed with the claim but it had to prove actual damages and could not rely on generalized, prorata calculations. In its written order, the trial court granted plaintiff's motion for summary disposition only with regard to the *method* by which defendant was attempting to prove damages; the motion was denied with regard to defendant's counterclaim for such damages. The court held that defendant "may not rely upon or use the *Eichleay* formula to calculate or support their claim for unabsorbed home office overhead, but . . . may present evidence of actual damages in connection with this component of their counterclaim." Further, the court held that defendant could not rely on a total cost method of calculating extended general conditions damages, but could present evidence of actual damages in this regard. Defendant applied for leave to appeal the decision to this Court, which was denied. *ITT Water & Wastewater USA, Inc v L D'Agostini & Sons Inc*, unpublished order of the Court of Appeals, entered October 2, 2013 (Docket No. 317348).

---

[1] The *Eichleay* formula for calculating such damages stems from a decision of the Armed Services Board of Contract Appeals, *Appeal of Eichleay Corp*, ASBCA No 5183, 60-2 BCA 2688 (1960).

During further discovery, defendant offered two alternative methods of calculating unabsorbed home office overhead and general conditions damages. Defendant's first method was allegedly based on lost profits. In this regard, defendant: (1) estimated the number of hours spent by three "key individuals" dealing with the pump delay and resulting construction complications, i.e., "distracted hours," which deprived these individuals of the time to pursue other projects; (2) assigned one-third of its gross profits to each of these "key individuals;" (3) divided each share by 2,000 hours "to account for the number of hours typically worked in a year, resulting in an hourly rate based on profit generating capability"; and then (4) multiplied this "hourly rate" by the number of "distracted hours" for each "key individual." By this "profit-based" method, defendant's unabsorbed home office overhead damages totaled $1,451,957.85. And by a similar "profit-based" methodology, defendant's general conditions damages totaled $907,709.04. Defendant's second method of calculating damages was allegedly salary-based. The annual salary of the three "key individuals" was divided by 2,000 hours and this "hourly rate" was then multiplied by the number of "distracted hours." By this method, defendant's unabsorbed home office overhead damages totaled $384,369.28 and its general conditions damages totaled $164,129.58.

Defendant also added a separate category of damages related to its equipment, explaining that this category of damages was added because plaintiff's expert witness criticized its inclusion in defendant's calculation of unabsorbed home office overhead and general conditions damages. Equipment damages were calculated by capturing all costs for owned equipment during the delay, which totaled $876,116.55. This figure was divided by the total number of working days during the period (126), for a daily average rate of $6,953.31. This daily rate was then multiplied by 103, the number of days of delay defendant attributed to the delay in delivering the pumps, for a total of $716,190.51.

Plaintiff filed a second partial motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that defendant's methods of calculating unabsorbed home office overhead, general conditions, and equipment damages were based on averages and could not establish that actual loss was incurred or the amount of such loss. Further, the calculations were based on gross profits, rather than net profits, and the alleged damages were not reasonably foreseeable. Moreover, defendant's equipment damages claim impermissibly relied on a prorated accounting of costs derived from "Equipment Watch Rates," and not from actual equipment expenses defendant incurred. Defendant responded, arguing that its calculations of damages were not speculative but were based on sound methodology, were reasonably foreseeable, and were based on net profits, not gross profits. Further, its equipment damages claim was appropriately calculated.

Following oral arguments, the trial court issued its written opinion and order granting plaintiff's motion with regard to defendant's claim for home office overhead damages, but denying it as to defendant's claims for general conditions and equipment damages. The trial court held that defendant's calculation of home office overhead damages was based on gross profits, not net profits, in both the profit-based and salary-based calculations and, thus, could not proceed "[b]ecause damages must be based on net profits and not gross profits . . . ." But defendant's claim for general conditions damages could proceed because it was not based on gross profits in either the profit-based or salary-based calculations. Defendant's claim for equipment damages could also proceed because defendant's method of calculating damages

reasonably determined its actual costs, and defendant's use of published rental rates was appropriate because that was the method provided for in the parties' contract. The trial court also concluded that defendant's damages were foreseeable because plaintiff, as "an experienced supplier that regularly conducts business with public works contractors like [defendant,]" could have foreseen that any delays would impact defendant's ability to procure other construction projects. And defendant's method of calculating damages by estimating what bids it could have made and its potential success rate on those bids had been approved by Michigan courts as a method to determine lost profits.

Thereafter, on November 18, 2013, the trial court entered a stipulation and order of dismissal without prejudice. The order states that the parties entered into an arbitration and tolling agreement concerning their claims. The trial court retained jurisdiction over this case and the case could be reopened under MCR 3.602(I) upon a party's motion "for purposes of confirming any award rendered pursuant to the arbitration agreement of the parties." The order also states that, pursuant to MCR 2.602(A)(3), it resolved the last pending claim and closed the case.

Then defendant filed this appeal challenging the trial court's two orders granting partial summary disposition in favor of plaintiff. However, the stipulated order of dismissal entered by the trial court pursuant to the parties' agreement to submit their claim and counterclaim to arbitration is not appealable by right; thus, this Court lacks jurisdiction over this appeal.

Pursuant to MCR 7.203(A)(1), we generally have jurisdiction over an appeal of right filed by an aggrieved party from a final judgment or final order of the circuit court which, in a civil case, is defined as including "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." MCR 7.202(6)(a)(i).[2] The two orders partially granting plaintiff's two motions for partial summary disposition of defendant's counterclaim clearly did substantially less than that. The first order did not summarily dispose of any part of defendant's counterclaim. The second order only summarily disposed of one category of defendant's claimed damages, permitting defendant to pursue several other categories of damages—if plaintiff was found liable on defendant's breach of contract counterclaim. Thus, an appeal of right did not arise by entry of either order and, but for the entry of the November 18, 2013 order, this case would have proceeded to trial.

The November 18, 2013 order, however, did not dispose of plaintiff's breach of contract claim or defendant's breach of contract counterclaim, nor did it adjudicate the rights and liabilities of the parties; rather, it acknowledged the parties' agreement to submit their claims to arbitration. Defendant apparently concluded that the entry of this order gave rise to an appeal by right. We cannot agree. The rights and liabilities of the parties have not been finally determined. And the trial court retained jurisdiction "for purposes of confirming any award rendered" in arbitration pursuant to MCR 3.602(I). MCR 3.602(I) provided that an arbitration award could be

---

[2] See also MCR 2.604(A) (an order that adjudicates "fewer than all the claims, or the rights and liabilities of fewer than all the parties . . . is not appealable as of right before entry of a final judgment.").

-4-

"confirmed by the court, unless it is vacated, corrected, or modified, or a decision is postponed, as provided in this rule." Thus, it is clear that the trial court contemplated additional proceedings and did not view its role in this dispute as complete. Similarly, in *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009), this Court held that an order referring claims to arbitration "where it would be arbitrated and then returned to the circuit court for entry of a judgment on the arbitration award[]" was not a final order or judgment. After entry of judgment on an arbitration award, defendant could challenge in an appeal by right the trial court's orders granting partial summary disposition in favor of plaintiff. See *id*. And, although the November 18, 2013 order stated that it resolved the last pending claim and closed the case, it is the effect of the order—not the form—that we consider, and this order clearly did not finally dispose of the parties' dispute. See *Faircloth v Family Independence Agency*, 232 Mich App 391, 400-401; 591 NW2d 314 (1998).

Appeal dismissed for lack of jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood